## J. E. Cozby v. The State.

### No. 4288. Decided November 22, 1916.

**1.—Perjury—Sufficiency of the Evidence—Corroboration.**

Where, upon trial of perjury, the testimony sustained a conviction, which was based on the testimony of one credible witness corroborated strongly by other evidence, there was no reversible error, and the court did not err in failing to give a peremptory instruction to acquit the defendant.

**2.—Same—Indictment—Precedent.**

Where, upon trial of perjury, the indictment followed the statute and approved precedent, the same was sufficient.

**3.—Same—Charge of Court—Requested Charges.**

Where defendant's special charge was fully covered by the court's main charge, there was no error in refusing it.

**4.—Same—Intoxicating Liquors—Impaired Memory—Mistake.**

Where, upon trial of perjury, the evidence did not raise the issue that defendant's memory was impaired from drinking alcohol, etc., affecting his memory, and excluded the idea that the defendant was acting under a mistake, there was no error in refusing a requested charge thereon. Following Sisk v. State, 28 Texas Crim. App., 432.

**5.—Same—Evidence—Record of Court.**

Upon trial of perjury, there was no error in admitting in evidence the complaint, warrant of arrest, etc., to identify the cause the grand jury had under consideration, and the jurisdiction therein. Following Stanley v. State, 95 S. W. Rep., 1076, and other cases.

**6.—Same—Evidence—Impeaching Witness.**

Where, upon trial of perjury, the defendant sought to impeach the main State's witness by showing that she had made a different statement before the trial from what she testified to on the trial, there was no error in permitting the State to introduce her testimony on the examining trial showing that her testimony was the same.

**7.—Same—Minutes of the Court—Foreman.**

There was no error in requiring the clerk to enter the court's order appointing the foreman of the grand jury, etc., as the minutes of the court are under his control during the whole term of the court.

**8.—Same—Evidence—Declaration of Defendant.**

Upon trial of perjury, there was no error in admitting testimony as to the declarations of the defendant as to knowing the chief prosecuting witness; besides, there was no issue made about this fact.

**9.—Same—Evidence—Declarations of Prosecutrix.**

Upon trial of perjury, there was no error under the facts of the case, in permitting the principal State's witness to testify that she was afraid of a cer-

tain party nor in admitting the declarations of the defendant as to why he had a gun on a certain occasion.

### 10.—Same—Age of Prosecutrix—Evidence—Harmless Error.

Where, upon trial of perjury growing out of a certain case of rape upon the chief prosecuting witness, there was no dispute or controversy as to the age of the said witness, the court's action in permitting in evidence the record of her birth from a page torn from her parents' Bible, if error, was harmless. Following Henkel v. State, 27 Texas Crim. App., 510, and other cases.

### 11.—Same—Cross-examination—Defendant as a Witness.

Where the trial court permitted a proper cross-examination of defendant and his witness, there was no reversible error.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Pittman & Taylor,* for appellant.—On question of credible witnesses: Curtis v. State, 46 Texas Crim. Rep., 480, 81 S. W. Rep., 29.

On question of corroboration of one credible witness: Gabrielsky v. State, 13 Texas Crim. App., 428; Hernandez v. State, 18 id., 134; Waters v. State, 30 id., 284; Cleveland v. State, 50 Texas Crim. Rep., 6; Mason v. State, 57 Texas Crim. Rep., 319; Key v. State, 72 Texas Crim. Rep., 129; Scott v. State, 72 id., 26.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of perjury and assessed the lowest punishment.

Appellant's able attorneys earnestly insist that the evidence was insufficient to sustain the verdict, and that his charges should have been given peremptorily requiring the jury to acquit him because the State did not prove by two credible witnesses, or one credible witness corroborated strongly by other evidence, the falsity of the defendant's statement made the basis of perjury. We have carefully read and studied the testimony. The jury after hearing all of it and the argument from both sides and the charge of the court, found the reverse of appellant's contention, and the trial judge who heard the testimony also so found. In our opinion, the evidence was sufficient and complied with the statute.

The testimony is ample to show that the Cotton Belt train arrived at Alexander at about 4:30 on Sunday evening, February 27, 1916. That appellant and one John Deisher together went from the depot just after the arrival of the train to said Deisher's residence, and remained there together from twenty to thirty minutes. Deisher's wife was away from home that evening. That the parents of Myrtle Bennett at this time were getting milk from Deisher, the two families

living not far apart in Alexander. Myrtle was a girl just over thirteen years of age. She testified that said evening, soon after the arrival of said train, she got a bucket and went from her home with it to Deisher's for milk; that when she reached there, she went into his residence and saw appellant in Deisher's presence; that they spoke to one another at the time, and that appellant knew her, saw her and spoke to her and called her by name at the time; that Deisher took her bucket, went out of that room into some other, got the milk and brought it back to her. That while this was transpiring, appellant left the room where she was; and that when Deisher came back to her with the milk, he took her, laid her down on the bed, unbuttoned her clothes and had a complete act of sexual intercourse with her. That when through she went back to her home with the bucket of milk. Her mother testified that Myrtle came home said evening soon or just after the arrival of said Cotton Belt train; that they were getting milk from the Deishers at that time, and that she did not know that Myrtle went to Mr. Deisher's that evening, because she was sick in bed herself, but "I know where I told her to go, and she is supposed to have gone." Her father swore that they were getting milk from Mr. Deisher at the time and they had milk for supper that night. Her father further swore that late that evening about or just before sundown, while at home, he saw a rabbit out some short distance, got his gun and went to kill it. While going after the rabbit, he saw appellant and Deisher together going in the direction of Deisher's. This evidently was shortly after the act of intercourse testified to by Myrtle and after she had reached home from Deisher's. That when appellant and Deisher saw him with the gun, Deisher went into a closet. Appellant asked him what he was going to kill, and he said the rabbit, telling about having seen it, etc., and that he said this loud enough for Deisher to have heard it. That thereupon Deisher came out of the closet, the three talked a while, and he then went on and killed the rabbit. Mr. Strong swore that he knew Myrtle; that about sundown that evening he saw her coming from the direction of Deisher's house, about fifty yards from Deisher's, going towards her home, with a bucket in her hand. Mr. Johnson, the county attorney, testified that while appellant was a witness before the grand jury, when the grand jury was investigating the case of rape against Deisher on said occasion, he then swore that he and Deisher went to Deisher's together after said train came in, and that if Myrtle had come there at the time she swore she did after milk, he would have seen her. Appellant himself swore that he and Deisher went together from the depot, after the arrival of said train, to Deisher's residence, and that they remained there together from twenty to thirty minutes and left there together about sundown; that Mrs. Deisher was not at home that evening.

Right away after said alleged rape of Myrtle by Deisher, a proper complaint was made against him, charging him with raping said girl on said occasion. The proper warrant was issued, and he was arrested

thereunder, and an examining trial was had, and he was bound over and gave bond to appear at the next term of the court to await the action of the grand jury. That all these papers were turned over to the grand jury, and at the June term of the court the grand jury investigated the said charge against Deisher. That the grand jury had appellant before them twice, and that he swore before them that he did not see Myrtle at Deisher's residence on said occasion when she testified she went there for milk that evening. His testimony on this point was the predicate for the charge of perjury against him. Myrtle swore positively that appellant did see her at Deisher's on that occasion and spoke to her; that she knew him, and he knew her. Appellant also swore that he knew Myrtle at that time, and before.

The evidence thus briefly stated shows that Myrtle testified positively that she went to Deisher's at the time stated to get milk for her parents, carrying with her a bucket for that purpose, and that on that occasion appellant did see her. Appellant himself corroborates her in that he swore he and Deisher went from the train to Deisher's just after it arrived, and remained there some twenty to thirty minutes. During this time is when Myrtle swears she was at Deisher's. She was corroborated by her parents in that she was sent by her mother for milk on this occasion, and her father swore they had milk for supper that night. She was seen on said occasion coming from Deisher's with a bucket in her hand. Other circumstances of corroboration of her are also shown. Upon the whole, we think the statute was met in that one witness, whom the jury expressly found was a credible witness, testified positively that appellant's said testimony before the grand jury was false, and that she was corroborated strongly by other evidence as to the falsity of appellant's said statement, and the court did not err in refusing to give appellant's requested peremptory instructions to acquit him.

The indictment was clearly sufficient; the allegations conformed fully to the requirements of the statute and followed the approved forms for such indictments. Appellant's special charge No. 3 was fully and completely covered by the court's charge. Hence the court correctly refused to give it.

His charge No. 5 was to the effect that if the jury should find from the evidence that as a result of drinking alcohol, if he was on the date mentioned, his memory was impaired to such an extent as to render him incapable of remembering seeing Myrtle Bennett at said house at said time, and that if he did see her and by reason of his said impaired memory he made the statement before the grand jury alleged in the indictment, to find him not guilty. The evidence in no way called for such a charge. Appellant's evidence itself excluded the idea that by reason of drinking alcohol, or any other reason, he was caused to make the alleged false oath by mistake, and shows that his said statement before the grand jury was made deliberately and wilfully after his

attention had been repeatedly, both in the grand jury room and before, called thereto.    (Sisk v. State, 28 Texas Crim. App., 432.)

The court correctly permitted the introduction of the said complaint against Deisher charging him with rape, the warrant for his arrest and his bond for his appearance before the grand jury, for the purpose, as stated by the court, to identify the cause the grand jury had under investigation and to show the jurisdiction of the grand jury to inquire into that subject matter.    Stanley v. State, 95 S. W. Rep., 1076; Wilson v. State, 27 Texas Crim. App., 47; Franklin v. State, 38 Texas Crim. Rep., 346; Martinez v. State, 39 Texas Crim. Rep., 479; Smith v. State, 31 Texas Crim. Rep., 315; 30 Cyc., pp. 1443 and 1445, and cases cited on the latter page.

Appellant sought to impeach Myrtle by showing she made a different statement before this trial from what she made on this trial.    The court, therefore, permitted the State to introduce her testimony on the examining trial to the same effect that she now testified, for the purpose of corroborating her; and appellant's bills Nos. 10 and 14, on this subject show no error.    (Branch's Crim. Law, sec. 874.)    The case was tried during the term at which the indictment was preferred.    The court committed no error in requiring the clerk to enter his order appointing Dave Deaton foreman of the grand jury, who signed the indictment as foreman.    The minutes of the court were in the control of the trial judge during the whole of the term.    The court correctly permitted the county attorney to testify that appellant when before the grand jury swore that if she, Myrtle Bennett, had come there that evening he would have seen her.    Nor does appellant's bill No. 11 to the court's remark that she would know whether appellant knew her or not when appellant was objecting to her testifying to that fact show any error.    She and appellant both testified that he knew her at that time, and before.    As qualified by the court, appellant's bill No. 12 shows no error.    Nor did the court err in permitting Myrtle Bennett to testify that she was afraid of said Deisher.    Nor did the court err in permitting J. C. Bennett to testify what appellant said to him and he to appellant in Deisher's hearing about why he had the gun and what he was going to kill therewith.    Myrtle Bennett and her father and mother positively testified to her age.    There was no dispute or controversy as to her age.    So that if the court erred in permitting the record of her birth from a page torn from her parents' Bible to be admitted, the error would be entirely immaterial and harmless.    She testified before the jury, and the jury saw her and could well judge of her age.    Hinkel v. State, 27 Texas Crim. App., 510; Holliday v. State, 35 Texas Crim. Rep., 133; Nelson v. State, 35 id., 205; Tracey v. State, 44 Texas, 9; Height v. State, 68 Texas Crim. Rep., 278; Veale v. State, 8 Texas Crim. App., 477; Gaston v. State, 11 Texas Crim. App., 143.    No error was committed by the court in permitting the cross-examination of appellant about his approaching a witness against him and what he said to such witness.    This was proper cross-exami-

nation. Nor did the court err in permitting the cross-examination of appellant's witness Poe, shown by his bill No. 17. It was the duty of the court to see that the statement of facts was true and correct before he approved it, and when the parties failed to agree thereon, differing about one fact testified to, it was the duty of the court to make the statement of facts on this point speak the truth, as he did, before approving it.

There is no reversible error shown in this case. The evidence was amply sufficient to justify the verdict.

The judgment is affirmed.

*Affirmed.*

HARPER, JUDGE, absent.